IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**UNITED STATES OF AMERICA,**
**Plaintiff,**

v.

**LASHAWN L. WILKS,**
**Defendant.**                                                  No. 10 - CR - 30134 DRH

### ORDER

**HERNDON, Chief Judge:**

### I. Introduction

Now before the Court is Defendant's Motion and Memorandum in Support of Application of the Fair Sentencing Act of 2010 (Doc. 17). The Government responded to the Motion (Doc. 25), and Defendant has filed a further reply (Doc. 28). Defendant LaShawn L. Wilks contends that the Fair Sentencing Act of 2010 ("FSA"), enacted on August 3, 2010, should apply to him because he was indicted on the same day of the enactment and has not pled guilty or been convicted. If the FSA applies to such pending cases, then Defendant's alleged possession of more than five grams of crack cocaine would be punishable by a maximum of one year imprisonment, a minimum $1,000 fine, or both. **21 U.S.C. § 844(a) (2010)**. But if it does not, then the federal saving statute, **1 U.S.C. § 109**, dictates that the previous version of the possession statute, **21 U.S.C. § 844(a) (2006 & Supp. III 2009)**, remains in force and Defendant would be punishable by a mandatory minimum sentence of five years.

The FSA does not expressly state that it applies retroactively, and the saving statute's narrow exceptions do not apply here. Moreover, the Seventh Circuit has already held that the FSA is not retroactive. This is not an issue for which the Court can exercise its discretion. It is a simple question of law. The Defendant's Motion is **DENIED**.

## II. Background

Defendant has been indicted for knowingly and intentionally possessing more than five grams of a mixture or substance containing cocaine base, known commonly as crack cocaine. The indictment charges that the time of the commission of the offense was on or about July 11, 2009 (Doc. 1). Defendant has not entered a guilty plea or gone to trial yet. At the time he allegedly committed the offense, the penalty for simple possession of a mixture of cocaine base over five grams provided for a minimum sentence of five years imprisonment. **21 U.S.C. § 844(a) (2006 & Supp. III 2009)**. This pre-FSA statute contained the following sentence:

> "Notwithstanding the preceding sentence, a person convicted under this subsection for the possession of a mixture or substance which contains cocaine base *shall be imprisoned not less than 5 years* and not more than 20 years, and fined a minimum of $1,000, if the conviction is a first conviction under this subsection and the amount of the mixture or substance exceeds 5 grams, . . . ."

*Id.* **(emphasis added)**. However, on August 3, 2010, the Fair Sentencing Act of 2010 ("FSA") was enacted, which eliminated the above sentence and its minimum five-year prison term. **Fair Sentencing Act of 2010, Pub. L. 111-220, § 3, 124 Stat. 2372,**

**2372**. Thus, under the new statute as amended, Defendant would be subject to at most one year in prison. **21 U.S.C. § 844(a) (2010) ("Any person who violates this subsection may be sentenced to a term of imprisonment of not more than 1 year, . . . .")**.

### III. Discussion

The general federal saving statute says:

> The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability.

**1 U.S.C. § 109**. The Supreme Court explained the saving statute this way:

> Congress enacted its first general saving provision, c. 71, 16 Stat. 432 (1871), to abolish the common-law presumption that the repeal of a criminal statute resulted in the abatement of "all prosecutions which had not reached final disposition in the highest court authorized to review them." Common-law abatements resulted not only from unequivocal statutory repeals, but also from repeals and re-enactments with different penalties, whether the re-enacted legislation increased or decreased the penalties. To avoid such abatements—often the product of legislative inadvertence—Congress enacted 1 U.S.C. § 109, the general saving clause, . . . .

***Warden, Lewisburg Penitentiary v. Marrero*, 417 U.S. 653, 660 (1974) (citations omitted) (quoting *Bradley v. United States*, 410 U.S. 605, 607 (1973))**. "[T]he saving clause has been held to bar application of ameliorative criminal sentencing laws repealing harsher ones in force *at the time of the commission of the offense*." ***Id.* at 661 (emphasis added)**. Further, it "extends

beyond mere repeals and reaches amendments to criminal statutes as well, *see United States v. Stillwell*, **854 F.2d 1045, 1047–48 (7th Cir. 1988)**, unless the new law by its terms applies retroactively." *United States v. Bell*, **624 F.3d 803, 814 (7th Cir. 2010)**. According to the Seventh Circuit, the saving statute "operates to bar the retroactive application of the FSA." *Id.*

Defendant's first argument is that the FSA should apply to him because his case is still pending and he has not yet pled guilty or been tried (Doc. 17, p. 2; Doc. 28, p. 2). Thus he maintains his case is unlike *Bell*, in which the defendant had already been tried and sentenced. *Bell*, **624 F.3d at 807**. Defendant also cites *United States v. Kolter* for the proposition that new statutes should apply to pending cases like his, unless "manifest injustice would result or there is a statutory directive or legislative history to the contrary." **849 F.2d 541, 543 (11th Cir. 1988)**. Defendant then offers snippets of legislative history which purport to reveal Congress's intent that the FSA apply to pending cases (Doc. 17, pp. 2–3).

The fact that Defendant's case is pending does not truly distinguish *Bell*. The determinative time period concerning the saving statute is "at the time of the commission of the offense." *Marrero*, **417 U.S. at 661**. The time of the commission of the offense here, according to Defendant's indictment, was on or about July 11, 2009 (Doc. 1), so the pre-FSA statute applies. *See* **1 U.S.C. § 109 ("[S]uch statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution . . . .")**.

The proposition cited from *Kolter* is inapt. *Kolter* was discussing a new statute amending case law, not an older statute. *Id.* at 543–44. In that situation, the new statute trumped the case law. Here, the new statute amends a statute, and the saving statute expressly controls.

Regarding the legislative history, the Court declines to second-guess the plain language of the saving statute. If the text of a statute is plain and unambiguous, courts must apply the statute according to its terms. *Carcieri v. Salazar*, 129 S. Ct. 1058, 1063–64 (2009). "'[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there.'" *Id.* at 1066–67 (quoting *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992)).

Defendant next raises a point nearly identical to one argued in *Bell*, that the saving statute does not apply because the FSA merely redefines a term in the old law (Doc. 17, p. 6). He again cites *Kolter*, where Congress's amended law gave a definition of the term "convicted felon" that differed from the definition being followed in case law. *Kolter*, 849 F.2d at 544. Defendant does not say which term here the FSA has allegedly redefined. He says the FSA "redefined the classes of persons to whom the minimum mandatories apply . . . ." (Doc. 17, p. 6). In *Bell*, the FSA provision at issue increased the quantity of crack cocaine required to trigger the mandatory minimum sentence under **21 U.S.C. § 841(b)(1)(B)(iii)**.[1] The FSA was

---

[1] It increased the minimum quantity from 5 to 28 grams. *See* **21 U.S.C. § 841(b)(1)(B)(iii) (2008)** and **21 U.S.C. § 841(b)(1)(B)(iii) (2010)**. *Bell*, **624 F.3d at 814.**

therefore found to have "expressly amended the punishment portion of **21 U.S.C. § 841**." ***Bell*, 624 F.3d at 814**. Likewise, here the FSA expressly amends a punishment portion of **§ 844(a)** by striking the sentence that mandated a minimum five-year prison term. **§ 3, 124 Stat. at 2372.** It does not redefine a term.

Defendant also claims that the FSA amendment falls within an exception to the saving statute because it is predominantly remedial or procedural, citing ***United States v. Blue Sea Line*, 553 F.2d 445 (5th Cir. 1977)** and ***United States v. Mechem*, 509 F.2d 1193 (10th Cir. 1975)**. He says "[t]he Congressional Record indicates that the FSA is predominantly a procedural and remedial change" and that the FSA "restructures how penalties are applied to a certain class of offenders" (Doc. 17, pp. 6–7).

Again, the Seventh Circuit has squarely addressed Defendant's argument. It is true that "the general saving clause does not ordinarily preserve discarded remedies or procedures . . . ." ***Marrero*, 417 U.S. at 661**. But "if the change affects a penalty, the saving clause preserves the pre-repeal penalty." ***Blue Sea Line*, 553 F.2d at 448**. In ***Blue Sea Line***, the statute at issue was an overhaul of the Shipping Act of 1916. ***Bell*, 624 F.3d at 815**. Congress had altered certain penalty provisions, changing the "sanction's label—from criminal to civil" while leaving the amount of the fine "untouched." ***Blue Sea Line*, 553 F.2d at 553**. By contrast, the Seventh Circuit concluded that "[n]o procedures or remedies were altered by the passage of the FSA. . . . [T]he FSA's predominant purpose was to change the punishments associated

with drug offenses." ***Bell*, 624 F.3d at 815**. Thus the Court finds Defendant's argument is without merit. By deleting the sentence in **§ 844(a)** that imposed a five-year minimum sentence, the FSA changed a punishment.

Next Defendant recasts his legislative-history argument. The saving statute should not apply because the explicit or implicit "legislative intent" indicates the FSA should apply to nonfinal cases (Doc. 17, pp. 8–9). Sen. Durbin, for example, regretted his earlier vote for the 1988 law. **155 Cong. Rec. S10490 (daily ed. Oct. 15, 2009)**. From this and similar statements, Defendant says the "only rational inference . . . is that the legislative intent was to apply the FSA to all pending cases . . . ."

The rule cited by Defendant is one of statutory construction. "[U]nder the general principles of construction requiring, if possible, that effect be given to all the parts of a law, the [saving clause] must be enforced unless, either by express declaration or necessary implication, arising from the terms of the law as a whole, it results that the legislative mind will be set at naught . . . ." ***Great Northern Railway, Co. v. United States*, 208 U.S. 452, 465 (1908)**. The legislative intent referred to in ***Great Northern Railway*** is that intent expressed in "the terms of the law as a whole," not legislative history. ***Id.*** The Court finds that the terms of the saving clause are clear: "The repeal of any statute shall not have the effect to release or extinguish any penalty . . . incurred under such statute, unless the repealing Act shall so expressly provide, . . . ." **1 U.S.C. § 109**. And this comports with the Seventh

Circuit's conclusion that "the FSA does not contain so much as a hint that Congress intended it to apply retroactively." ***Bell,* 624 F.3d at 815**. The Court cannot turn a blind eye to clear statutory command as well as Seventh Circuit precedent based on comments from individual legislators.

According to Defendant, the saving statute should not apply because it thwarts the reasonable expectations of the parties. In support, Defendant says ***United States v. Chambers*** rejected the application of the saving statute to convictions not yet final (Doc. 17, p. 10). In ***Chambers***, however, the Supreme Court was deciding whether the saving statute should preserve the penalties in place under the National Prohibition Act after the Act was rendered inoperative by the Twenty-First Amendment. ***United States v. Chambers*, 291 U.S. 217, 223–24 (1934)**. This is not a case of a constitutional amendment rendering a statute inoperable. ***Chambers*** does not control here.

Defendant also suggests ***Hamm v. City of Rock Hill*** is precedent for disregarding the saving statute when it is Congress's apparent intention to "avoid inflicting punishment at a time when it can no longer further any legislative purpose." **379 U.S. 306, 313 (1964)**. In ***Hamm***, the Supreme Court held that criminal trespass convictions under state law must be vacated after passage of the Civil Rights Act of 1964. ***Id.* at 308**.[2] The Court explained that the Civil Rights Act "substitute[d]

---

[2] Although state convictions were at issue in *Hamm*, the Court also wrote, "We think it is clear that the convictions, if federal, would abate." ***Id.* at 312**.

a right for a crime," a "drastic" change beyond a mere "amendment or repeal." ***Id.* at 314**. Thus Defendant's reliance on ***Hamm*** is misplaced. The FSA is not a drastic change that substitutes a right for a crime. Possession of crack cocaine has not become a right; it remains a crime.

Defendant suggests, by reference to ***Griffith v. Kentucky*, 479 U.S. 314 (1987)**, that it may violate the equal-protection guarantee of the Fifth Amendment if the new FSA is not applied to Defendant's pending case (Doc. 17, p. 12). In ***Griffith***, according to Defendant, the Supreme Court applied a new rule announced in ***Batson v. Kentucky*, 476 U.S. 314 (1987)** to pending criminal actions in part to avoid a constitutionally suspect selective application of new rules (Doc. 17, p. 12). The case under review, however, involves Congress's amendment of a statute, not a new constitutional rule announced by the Supreme Court. Indeed, ***Griffith*** expressly distinguished the legislative from the judicial process. ***Griffith*, 479 U.S. at 322 ("Unlike the legislature, we do not promulgate new rules on a broad basis.")**. Thus not applying the FSA to a pending cases does not offend equal protection.

Next, Defendant's equal-protection claim slides into a distinct claim regarding the "racially disparate impact of the 100-to-1 crack-cocaine powder ratio enacted in the 1986 Act" (Doc. 17, p. 13). However, this racial-disparity claim has already been addressed and rejected in this Circuit. ***United States v. Spencer*, 160 F.3d 413, 413–14 (7th Cir. 1998);** ***United States v. Westbrook*, 125 F.3d 996, 1010 (7th Cir. 1997)**.

Defendant's final argument is that the mandatory minimum sentence under the pre-FSA statute violates the Eighth Amendment's prohibition against cruel and unusual punishment (Doc. 17, pp. 13–14). In **Graham v. Florida**, the Supreme Court considered "objective indicia of national consensus" to decide whether a sentencing practice applied to a class of offenders was unconstitutional. **130 S. Ct. 2011, 2023 (2010)**. As with equal protection, Eighth Amendment challenges to the sentencing for possession of crack cocaine have been rejected by the Seventh Circuit. **United States v. Baker, 78 F.3d 1241, 1248 (7th Cir.1996); United States v. Smith, 34 F.3d 514, 525 (7th Cir.1994)**.

## IV. Conclusion

For the foregoing reasons, the FSA's elimination of the mandatory minimum sentence under **21 U.S.C. § 844(a)** does not apply to Defendant's pending case. Therefore, Defendant's Motion and Memorandum in Support of Application of the Fair Sentencing Act of 2010 (Doc. 17) is **DENIED**.

**IT IS SO ORDERED.**

Signed this 4th day of February, 2011.

David R. Herndon
2011.02.04
13:35:09 -06'00'

**Chief Judge**
**United States District Court**